1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Hon. John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

FERNANDO FRIAS,

        Plaintiff,

    vs.

PATENAUDE & FELIX, A.P.C.,

        Defendant.

DEFENDANT'S MOTION TO DISMISS
PURSUANT TO RULE 12(B)(6)

MOTION NOTING DATE:
JULY 31, 2020

## I. INTRODUCTION

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendant Patenaude & Felix, APC ("Patenaude") moves to dismiss the Complaint filed by Plaintiff Fernando Frias ("Frias"). (Dkt 1-1). Frias alleges a variety of claims under 15 U.S.C. § 1692, *et seq.*, known as the federal Fair Debt Collection Practices Act ("FDCPA") and chapter 19.86, RCW, known as Washington's Consumer Protection Act ("CPA").

All "counts" alleged by Frias arise from claims that Patenaude: (1) incorrectly issued to him two garnishment packages intended for a different debtor that had the same first and last name, but a different social security number; and (2) sent the garnishment directly to him rather than his attorney. As to the first assertion, the great weight of authority reflects that such cases of mistaken identity do not form the basis of viable claims. As to the second assertion, RCW 6.27.130(1) requires garnishment packages to be served directly on the garnishee at his last known address, and this statute provides express permission under 15 U.S.C. § 1692c(a)(2)

L E E · S M A R T

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1
2
3
4

for direct contact with the garnishee; so Patenaude followed the mandated procedure, even if Frias received the package as a result of mistaken identity. Frias also alleges a "Count" for injunctive relief, but injunctive relief is a remedy, not a cause of action. All of Plaintiff's claims also fail on the merits for a variety of reasons.

5
6
7

## II. FACTS

8
9
10
11

In early 2017, Patenaude obtained a default judgment against Fernando Frias, based on a credit card debt owed to Discover Bank, in King County Superior Court case number 17-2-05363-5. (Dkt 1-1 at ¶ 5, Ex. A). Judgment was entered against "an individual named Fernando Frias with a social security number ending in the numbers 4970." (*Id.*). "The Plaintiff in this case is not the same Fernando Frias. His social security number does not end in 4970, nor did he ever have an account with Discover Bank ending in 6743." (Dkt 1-1 at ¶ 7).

12
13
14
15
16

On August 20, 2019, Patenaude, on behalf of its client Discover Bank, issued a writ of garnishment on the earnings of judgment debtor Fernando Frias and forwarded the garnishment package to Frias and the University of Washington. (Dkt 1-1, Ex. A). The judgment and the Writ of Garnishment For Continuing Lien on Earnings indicates that the garnishment is sought against the individual with the social security number ending in 4970. (*Id.*).

17
18
19

On August 30, 2019, an attorney for Frias sent a letter to Patenaude. (Dkt 1-1, Ex. B). The letter stated that Frias did not have a social security number ending in 4970, disputed the debt, and requested that Patenaude cease communication with Mr. Frias. (*Id.*).

20
21
22
23

On March 13, 2020, Patenaude, on behalf of its client Discover Bank, issued a writ of garnishment to Chase Bank seeking to collect from judgment debtor Fernando Frias, who had a social security number ending in the numbers 4970, and also forwarded the garnishment package to Frias and Chase Bank. (Dkt 1-1, Ex. C).

24
25

On April 2, 2020, Chase Bank answered the writ of garnishment by indicating that the garnishee defendant was not employed with Chase Bank. (Dkt 1-1 at ¶ 20, Ex. D).

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

No further action was taken, and no money was ever taken from Frias, either through a bank account or wages.

### III.  POINTS AND AUTHORITIES

**A.  Standard on motions to dismiss.**

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. The plaintiff is obligated to provide grounds for their entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The pleading standard Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Dismissal under Rule 12(b)(6) "can [also] be based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Although the court accepts as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Moreover, the court may consider documents attached to the complaint, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and need not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). *See also Schasa v. AmTrust Bank*, 2011 WL 13220099, at \*2 (C.D. Cal. Aug. 2, 2011) ("a written instrument that contradicts Plaintiff's allegations generally trumps the allegations").

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO RULE 12(B)(6) - 3
2:20-cv-00805-JCC
6694386.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

**B.    Counts 1-2, which consists of alleged violations of §§ 1692e and 1692f , fail as a matter of law where they are based on an error of mistaken identity between people with the same name, and Plaintiff knew he was not the actual judgment debtor, who had a different social security number.**

In Counts 1-2, (Dkt 1-1 at ¶¶ 30-36), Plaintiff alleges claims under §§ 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).  Courts consistently dismiss FDCPA claims like these where there is a mistaken identity and a recipient of a communication can easily see that they are not the debtor.  When Patenaude issued a writ of garnishment to University of Washington, Mr. Frias and the actual debtor shared the same first and last names, but the actual debtor has a different social security number.  (Dkt 1-1 at ¶¶ 5, 7, Ex. A).  This is not a unique situation, and similar claims have been dismissed by various courts, as reflected by the legal authority provided below.

In *Hill v. Javitch, Block & Rathbone, LLP*, 574 F.Supp.2d 819 (S.D. Ohio 2008), a lawsuit intended for Scipio Hill was mistakenly served on Lawrence Hill.  *Id*. at 821.  Mr. Hill appeared in the lawsuit, averred he was not the debtor, and the collector dismissed the suit.  *Id*. Subsequently, the collector filed a new lawsuit and served the correct person, Scipio Hill.  *Id*. Lawrence Hill, however, filed a lawsuit against the collector alleging claims under the FDCPA, importantly 15 U.S.C. § 1692f.  *Id*. at 821-822.  The collector filed a Rule 12(b)(6) motion to dismiss.  The district court dismissed claims, holding the plaintiff failed to allege that a judgment was taken against him, that he was ever in any jeopardy of having any of his property attached, *id*. at 825, and that even the least sophisticated consumer would have understood that the defendant was not attempting to collect a debt from the plaintiff.  *Id*. at 826.  Likewise, here, Frias knew "his social security number does not end in 4970, nor did he ever have an account with Discover Bank ending in 6743." (Dkt 1-1 at ¶ 7).  Since he did not have the same social security number, he was never in any danger of having anything collected from him.

In *Kujawa v. Palisades Collection LLC*, 614 F.Supp.2d 788 (E.D. Mich. 2008), the collector sought to collect against a debtor named James J. Kujawa.  *Id*. at 790.  The plaintiff

had the same name as the debtor, but had a different social security number, and lived at a different address. *Id*. The collector filed two lawsuits against the debtor and default judgment was entered against the debtor.  The collector issued a writ of garnishment with a third party using the debtor's social security number, *id*., and a judgment lien with the debtor's social security number, but on the plaintiff's property. *Id*.  The plaintiff sued the collector. *Id*.  The collector moved to dismiss claims, arguing that, under the "least sophisticated consumer" test, the plaintiff knew that the defendants were not attempting to collect on a debt owed by him, and the court agreed. *Id*. at 791–92.  The district court held:

> Although plaintiff was sent a release of garnishment and notice of judgment lien, he states in his affidavit that the social security number listed on the garnishment release and judgment lien was not his. Plaintiff also states in his affidavit that he did not owe a debt to Providian National Bank. Thus, plaintiff knew that these documents were not directed at him.

*Kujawa*, 614 F. Supp. 2d at 792.

Likewise, here, Frias alleges that he knew "his social security number does not end in 4970, nor did he ever have an account with Discover Bank ending in 6743." (Dkt 1-1 at ¶ 7).

In *Kaniewski v. Nat'l Action Financial Services*, 678 F.Supp.2d 541 (E.D. Mich. 2009), an individual received automated calls from a debt collector.  The individual called the debt collector, explaining he did not owe any debts and asked to be removed from the company's computer system. *Id*. at 543.  The calls to the individual eventually ceased.  The district court, citing *Hill* and *Kujawa*, dismissed claims under §§ 1692e and 1692f on the ground that the plaintiff knew the defendant's communications were not directed at him, but rather at another individual. *Id*. at 546 ("The court agrees with the reasoning of *Hill* and *Kujawa*. There is no dispute that Plaintiff knew that Defendant was not attempting to collect a debt from him")..

In *Thompson v. CACH, LLC*, 2014 WL 5420137 (N.D. Ill. Oct. 24, 2014), plaintiff Brandi L. Thompson sued a collector under the FDCPA and state law claims for collecting debts owed by Brandi N. Thompson, a debtor with the same first and last name. *Id*. at *1.  The

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

collector filed a Rule 12(b)(6) motion, and the district court granted the motion on claims under §§ 1692e(5), 1692f, 1692f(1), and 1692f(6), holding:

> The crux of Thompson's § 1692f(1) claim is that Defendants sought to collect on a debt that she never owed. But the focus" of § 1692f(1) is on the means used to collect the alleged debt. Thompson does not allege that Defendants tried to impose additional "interest, fee, charge, or expense incidental to the principal obligation" that already existed. Nor did they attempt to create a new obligation altogether. Instead, **they attempted to collect on an existing debt, except they did so from the wrong individual. Liability does not lie under § 1692f(1) in such circumstances."**

*Id*. at *6 (emphasis added, citation omitted).

In *Martin v. Kansas Counselors, Inc.*, 2014 WL 1910056 (D. Kan. May 13, 2014), plaintiff Michael J. Martin asserted claims against the collector under the FDCPA and the Kansas CPA arising from the collector attempting to collect debts owed by another person with the same first and last name. *Id*. at *1. The district court dismissed a variety of FDCPA claims, including 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(8), 1692e(10); and 1692f. In regard to claims under § 1692e, the district court held:

> "To the extent Plaintiff is claiming that Defendant misrepresented that Plaintiff owed the alleged debts, the Court does not find this to be a misrepresentation of the character or legal status of the debts. **Defendant's representation that Plaintiff owed the debts was based upon its reasonable belief that Plaintiff actually owed the debts, a belief based upon Plaintiff and the actual debtor having the same first and last name**."

*Id*. at *7 (emphasis added). It's dismissal of the other claims followed similar reasoning.

There are many other cases in which district courts have dismissed claims against a collector where the plaintiff had the same name as the actual debtor, and/or where the plaintiff clearly knew that he or she was not the true subject of the debtor's collection efforts. *See e.g.*, *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1095 (E.D. Cal. 2013) ("Plaintiff does not allege that defendants sued him, took his default, and placed a lien on his property for reasons other than a mistaken belief that he owed the subject debt"); *Blauer v. Zucker, Goldberg, & Ackerman, LLC*, 2011 WL 1113280, at *2 (D. Del. Mar. 24, 2011) (dismissing on

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

a Rule 12(b)(6) motion where it was obvious from the face of the complaint that plaintiff knew she did not owe the debt and that, even if there had been a violation, the bona fide error defense applied); *Hedayati v. Perry Law Firm*, 2017 WL 4864491 at *7 (C.D. Cal. Oct. 27, 2017) ("Even the least sophisticated debtor knows his own address and can understand that, if he receives debt collection notices that list an address he doesn't recognize and a name similar to his own, that the debt collector likely has the wrong individual").

All of the FDCPA provisions alleged by Frias in Counts 1-2 fail for the reasons provided in the exemplar cases above. Patenaude sent papers to the wrong Fernando Frias, but identified the social security number of the correct debtor. Frias knew "his social security number does not end in 4970, nor did he ever have an account with Discover Bank ending in 6743." (Dkt 1-1 at ¶ 7). Even the least sophisticated consumer would know that Patenaude was trying to collect from someone else. No claim lies here, where Frias knew he did not owe the debt, the garnishment contained a social security number that did not apply to him, and no money was taken from Frias.

C.   **Counts 3-4, which assert related claims under § 1692c(2)(a)(2) and RCW 19.16.250(12) fail where RCW 6.27.130(1) provides an express exception to the general rule of not contacting a represented party.**

Counts 3-4 allege violations of § 1692c(2)(a)(2) and RCW 19.16.250(12), respectively. (Dkt 1-1 at ¶¶ 37-43). The claim under RCW 19.16.250(12) asserts a violation of Washington's Collection Agency Act ("CAA"). A violation of the CAA constitutes a *per se* violation under the CPA. RCW 19.16.440.

Both § 1692c(2)(a)(2) and RCW 19.16.250(12) provide a general prohibition on a debt collector communicating directly with a debtor that is represented by counsel. There are, however, exceptions to the general rule. Frias alleges that Patenaude violated the § 1692c(2)(a)(2) and RCW 19.16.250(12) by directly sending a garnishment package to Frias

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

after receiving a cease contact demand from Plaintiff's counsel.  The communication at issue falls under an exception, because RCW 6.27.130(1) expressly requires garnishment materials to be served directly on the garnishee.  Specifically, the garnishment package fits within the remedy exception under § 1692c(c)(2), making the communication permissible.  *Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757, 763 (8th Cir. 2018).  A collector may contact a consumer when it has "express permission" to do so.  15 U.S.C. § 1692c(a)(2).

Washington law requires a judgment creditor to mail a copy of the writ "to the judgment debtor, by certified mail, addressed to the last known post office address of the judgment debtor" or it "shall be served on the judgment debtor in the same manner as is required for personal service of summons upon a party to an action." RCW 6.27.130(1).  This requirement provides "express permission" by requiring collectors to send garnishments directly to the debtor.  *Resler v. Messerli & Kramer, P.A.*, 2003 WL 193498, at *4 (D. Minn. Jan. 23, 2003) (express permission granted where "Minnesota law requires service of a garnishment levy on the judgment debtor," even when represented).  The FDCPA is not intended to preempt state-court rules of service.  *Holcomb v. Freedman Anselmo Lindberg, LLC*, 900 F.3d 990, 994 (7th Cir. 2018) (FDCPA's no contact requirement did not preempt Illinois rule requiring service on party); *Coleman v. Daniel N. Gordon, P.C.*, 2012 WL 2374822, at *2 (E.D. Wash. June 22, 2012) (party not liable under the FDCPA for complying with state law for service).  Thus, it is not a violation of the FDCPA, or an unfair or deceptive act or practice under the CPA to comply with RCW 6.27.130(1), and serve the garnishment package directly on the debtor, rather than on an attorney.

"The CAA is our state's counterpart to the FDCPA." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 53, 204 P.3d 885, 897 (2009).  Many provisions are identical, and decisions on the FDCPA may be instructive when considering similar provisions between the

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO RULE 12(B)(6) - 8
2:20-cv-00805-JCC
6694386.doc

LEE · SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

two statutes.  *See Id.*, 166 Wn.2d at 63, 204 P.3d at 902.  There are no on point cases discussing RCW 19.16.250(12), however, the FDCPA reasoning is persuasive, and it would be absurd to hold that an attorney serving garnishment papers would have to violate RCW 19.16.250(12) to do so.  Also, in regard to the CPA requirements, there can be no injury to business or property arising simply from the receipt of these garnishment papers.  *Kwan v. Clearwire Corp.*, 2010 WL 11684293, at *3 (W.D. Wash. Feb. 22, 2010) (dismissing RCW 19.16.250(12) claim where no injury specifically from the alleged communication alleged).

> **D.**    **Count 5 should be dismissed for reasons set forth on Sections III.B above and III.F below.**

Count 5 consists of an alleged violation of RCW 19.16.250(21), which prohibits attempts to collect amounts in excess of the principal other than allowable interest, collection costs or handling fees expressly authorized by statute.  This claim fails:

> 1.    For the reasons set forth in Section III.B above; and

> 2.    For the reasons set forth in Section III.F, below.

In Section III.B, there is an analysis regarding similar FDCPA claims, and authority is provided reflecting that collecting against someone with the same first and last name, but a distinctly different social security number, is not a violation of those portions of the FDCPA relating to unfair or deceptive acts or practices, and attempts to collect amounts not owed, since it is clear that Patenaude was attempting to collect from a different Fernando Frias.

In Section III.F, there is an analysis and authority showing: (a) that CPA claims are barred by the judicial action privilege and Washington public policy, (b) and that Frias cannot support the elements of a CPA under the test set forth in *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

LEE · SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

2

**E.     Count 6 (which is also related to one component of Count 1) fails because actually taking action is not a "threat to take action," as contemplated by § 1692e(5) and RCW 19.16.250(16).**

3     Count 6 alleges a violation of RCW 19.16.250(16), which is an identical provision

4     between the CAA and the FDCPA's § 1692e(5), which was also alleged under Count 1.

5     Actually taking action is not a "threat to take action," as contemplated by § 1692e(5)

6     and RCW 19.16.250(16).   *See Hoffman v. Transworld Sys., Inc.*, 806 F. App'x 549, 552

7     (9th Cir. 2020) ("Defendants did not make a 'threat to take any action that cannot legally be

8     taken or that is not intended to be taken,' 15 U.S.C. § 1692e(5); rather, they filed a lawsuit");

9     *Id.* ("Plaintiffs failed to state a CPA claim for violation of section 19.16.250(16) of the Revised

10    Code of Washington because the Defendants filed a collection lawsuit rather than making a

11    threat to take any further litigation action").

12
13

> Subsection (5) is one of the specifically enumerated examples of conduct that violates § 1692e; it prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). This subsection is "aimed at preventing empty threats of litigation as a means of scaring the debtor into payment." *Jenkins v. Union Corp*., 999 F. Supp. 1120, 1136 (N.D. Ill. 1998). By its plain language, "[s]ection 1692e(5) does not prohibit the taking of an action that cannot legally be taken." *Fick*, 2012 WL 1074288, at *4. Rather, "[t]he plain language ... makes clear that the prohibition extends only to threats of action that cannot legally be taken." *Id.* (emphasis added); *see also Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980, 988 (W.D. Wis. 2015) ("This court agrees ... that extending § 1692e(5) to apply to actions actually taken conflicts with the statutory text."); *Bravo v. Midland Credit Mgmt., Inc.*, No. 14 C 4510, 2014 WL 6980438, at *3 (N.D. Ill. Dec. 9, 2014) (holding that "§ 1692e(5) prohibits only the threat of unlawful action, not the unlawful action itself" because "Congress intended that provision to prohibit only threats, not actions" and that "the weight of authority from district[ ] courts in this Circuit ... supports this conclusion"), *aff'd*, 812 F.3d 599 (7th Cir. 2016); *Thompson v. CACH, LLC*, No. 14 cv 313, 2014 WL 5420137, at *4 (N.D. Ill. Oct. 24, 2014) ("[T]hreats in and of themselves ... animate § 1692e(5), not what unfolds following the taking of a debt collection action.").

14
15
16
17
18
19
20
21
22

*Eul v. Transworld Sys.*, 2017 WL 1178537, at *15 (N.D. Ill. Mar. 30, 2017).[1]

23

24
25

---

[1] *See also St. John v. Cach, LLC*, 822 F.3d 388, 390–91 (7th Cir. 2016) (filing lawsuit is not a threat to take action that cannot legally be taken, even if collector does not intend to take the case through trial); *Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980, 988 (W.D. Wis. 2015) ("This court agrees ... that extending § 1692e(5) to apply to actions actually taken conflicts with the statutory text").

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO RULE 12(B)(6) - 10
2:20-cv-00805-JCC
6694386.doc

**LEE·SMART**
P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

Frias argues that Patenaude violated § 1692e(5) by issuing the garnishment packages, and he asserts action actually taken is a "threat" of action it could not take. (Dkt 1-1 at ¶ 31).

"A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709, 131 S. Ct. 2020, 2033, 179 L. Ed. 2d 1118 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed.2011)). Plaintiff cites the *Sprinkle* case, an early case from 14 years ago that was issued before there was much authority on this issue. *Sprinkle v. SB&C Ltd*., 472 F. Supp. 2d 1235, 1246 (W.D. Wash. 2006) ("few reported cases exist on this topic"). The holding is erroneous under the great weight of existing authority, it does not follow the statutory language, and is not as well reasoned as cases provided by Patenaude. This Court should not follow it.

There are other portions of FDCPA that deal with actions, but this one provision relates only to "threats," and it should be presumed that Congress intended the difference in language. While unpublished, the Ninth Circuit has held that talking action is not the same as threatening action. *Hoffman*, 806 F. App'x at 552.

As such, this Court should dismiss the RCW 19.16.250(16), which is the entirety of Count 6, and this is another ground on which to also dismiss the § 1692e(5) claim in Count 1.

**F.      State law CPA claims against Patenaude are barred by judicial-action privilege, and Washington public policy, and otherwise fail on the merits**

**1.      State law CPA claims against Patenaude are barred by judicial-action privilege, and Washington public policy.**

In Washington, the "judicial-action privilege" has extended immunity for lawyers' actions beyond defamation cases and litigation privilege. *Jeckle v. Crotty,* 120 Wn. App. 374, 385, 85 P.3d 931, 937 (2004). Washington courts have applied the privilege to bar claims of interference with a business relationship, outrage, infliction of emotional distress, civil conspiracy, and statutory claims. *Id.* "Judicial-action privilege" differs from witness immunity

and litigation privilege, since the latter protects the testimony of witnesses, whereas the former protects the actions that a lawyer takes during litigation. *Id.*, 120 Wn. App. at 386.

In *Jeckle*, Washington's Medical Quality Assurance Commission investigated Dr. Jeckle. *Id.* at 378. The Commission obtained copies of 10 of the doctor's patient files, but then closed the investigation. *Id.* Attorney Crotty, who represented plaintiffs in a class action against Jeckle, asked the Commission to reopen its investigation, which it did. *Id.* Crotty shared his litigation information with the Commission, obtained a copy of one of the patient files the Commission had copied during its initial investigation, and shared this patient file with other attorneys having similar litigation against the doctor. *Id.* at 379. None of this activity consisted in giving testimony, but was an attorney's conduct in litigation. Jeckle sued Crotty and his law firm, alleging many causes of action, including CPA violations. *Id.* at 379-80. The law firm and lawyer defendants moved under CR 12(b)(6) to dismiss Jeckle's causes of action. *Id.* at 380. The motions were granted, and Jeckle appealed. *Id.* The Court of Appeals affirmed trial court holding that **"attorneys and law firms have absolute immunity from liability for acts arising out of representing their clients."** *Jeckle*, 120 Wn. App. 374 (emphasis added). This district court has similarly applied *Jeckle* to bar claims based on litigation action, holding:

> The Court agrees with the KBM Defendants that at the very least, Plaintiff's claims fail as a matter of law because the KBM Defendants enjoy absolute immunity for their alleged litigation conduct serving as the basis for Plaintiff's claims. Generally, Washington law establishes that an attorney is immune from litigation by an opposing party for actions taken on behalf of a client against that party, under the doctrine of the "judicial action privilege." *Jeckle v. Crotty*, 120 Wn. App. 374, 386, 85 P.2d 931 (2004); *McNeal v. Allen*, 95 Wash. 2d 265, 621 P.2d 1285 (1980). This doctrine bars a plaintiff from suing attorneys and law firms for actions undertaken in litigation while "representing their clients." *Id.*

*Block v. Snohomish Cty.*, No. C18-1048-RAJ, 2019 WL 954809, at *5 (W.D. Wash. Feb. 27, 2019), *appeal dismissed*, No. 19-35329, 2019 WL 3297382 (9th Cir. July 9, 2019). *See also McClain v. 1st Sec. Bank of Washington*, C15-1945 JCC, 2016 WL 8504775, at *5 (W.D. Wash. Apr. 21, 2016) (applying *Jeckle* and determining that because "[a]ll of McClain's

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO RULE 12(B)(6) - 12
2:20-cv-00805-JCC
6694386.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

state law claims against Huffington, McKay, and their firm are based on actions they took on behalf of FSBW ... [t]hey are therefore immune from liability for these actions").[2]

Many courts have held that garnishment proceedings are a "judicial actions," although Washington courts do not seem to have reached this issue yet. *See e.g., In re Mims*, 209 B.R. 746, 748 (Bankr. M.D. Fla. 1997) ("a garnishment proceeding is a judicial action against the debtor"); *In re Giles*, 271 B.R. 903, 905 (Bankr. M.D. Fla. 2002) (same); *Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1101 (D. Or. 2000) (garnishment is judicial action for purposes of section 1692f(6)); *Parker v. Wetsch & Abbott, PLC.*, 2006 WL 4846042, at *3 (S.D. Iowa July 11, 2006); *Davis v. Nebraska Furniture Mart, Inc.*, 2013 WL 3854462, at *5 (D. Kan. July 24, 2013), *aff'd*, 567 F. App'x 640 (10th Cir. 2014). Since issuing a garnishment is a judicial action, an attorney that issues a garnishment is protected against state law claims for taking such judicial action.

As in *Jeckle*, *Block*, and *McClain*, this Court should dismiss state law claims against Patenaude since Frias's claims are based solely on actions taken by Patenaude in the course of judicial actions.

Likewise, under Washington public policy, adversaries of a lawyer's client generally cannot sue the opposing lawyer. *Jeckle*, 120 Wn. App. at 383-85, 85 P.3d 931. "[A]llowing a plaintiff to sue his or her adversary's attorney under a consumer theory infringes on the attorney-client relationship." *Jeckle*, 120 Wn. App. at 384, 85 P.3d at 937.

> Providing a private cause of action [under a CPA theory] to a supposedly aggrieved party for the actions of his or her opponent's attorney would stand the attorney-client relationship on its head and would compromise an attorney's duty of undivided loyalty to his or her client and thwart the exercise of the attorney's independent professional judgment on his or her client's behalf.

*Id.* at 384-85 (citation omitted).

---

[2] State law differs from federal on this point. In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Supreme Court held that lawyers in litigation can be debt collectors under the FDCPA based on Congress's removal of privilege in that Act. There is no similar correlation as to state law claims, and the privilege for state claims remains.

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

2    As in *Jeckle*, Frias's state law claims, and CPA claims in particular, should be

3    dismissed on public policy grounds, since Frias's claims stand the attorney-client relationship

4    on its head, would compromise Patenaude's duty of undivided loyalty to its client, and thwarts

5    the exercise of Patenaude's independent professional judgment on its client's behalf.

6                 **2.      Frias's fails to meet the elements of the *Hangman Ridge* test.**

7          "[T]o prevail in a private CPA action … a plaintiff must establish five distinct elements:

8    (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest

9    impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman*

10   *Ridge*, 105 Wn.2d at 780.

11                 **a.      Frias has not articulated a legitimate unfair or deceptive act
                            or practice under the CPA.**

12        Sections III.C.1-2, above, provide argument and authority as to why this Court should

13   dismiss Count 4 [RCW 19.16.250(12)] and Count 6 [RCW 19.16.250(16)] (related to

14   communications with represented parties and making "threats to action," respectively).  Only

15   Count 5 [RCW 19.16.250(21)] remains as a per se CPA claim to be addressed.

16   RCW 19.16.250(21) prohibits a collection agency from collecting, or attempting to collect, "in

17   addition to the principal amount of a claim any sum other than allowable interest, collection

18   costs or handling fees expressly authorized by statute."  Patenaude did not attempt to collect

19   anything from Frias, it attempted to collect from someone with the same name who had a

20   different social security number.  (Dkt 1-1 at ¶ 7).  As reflected in Section III.B above, many

21   courts have clearly held that mistakenly seeking to collect from someone with the same name

22   but different social security number is not an unfair or deceptive act or practice under the

23   FDCPA. The same is true for the corresponding CAA claims under the CAA.

24

25

**b.      No trade or commerce.**

Patenaude challenges the second element of "trade or commerce."  Generally, events occurring solely in litigation do not constitute "trade or commerce."  *Blake v. Fed. Way Cycle Ctr.*, 40 Wn. App. 302, 312, 698 P.2d 578, 584 (1985); *Medialdea v. Law Office of Evan L. Loeffler PLLC*, No. C09-55RSL, 2009 WL 1767185, at *8 (W.D. Wash. June 19, 2009) ("a court proceeding does not constitute "trade or commerce" under the CPA").

Claims directed at the competence of and strategy employed by a lawyer are exempt from the CPA.  *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 603, 200 P.3d 695, 699 (2009). Only claims implicating entrepreneurial aspects of a law practice meet the "trade or commerce" element of a CPA claim, so only such claims are actionable under the CPA.  *Id.*  "In a legal practice entrepreneurial aspects include how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients."  *Id.*  Brown only challenges Patenaude's litigation strategy and tactics.  Litigation strategy and tactics are not acts in "trade of commerce."  As this Court held in a similar context:

> Plaintiffs allege that they challenge Friedman's entrepreneurial practices, because "Friedman is a debt collector who brought debt collection cases in [King County District Court] for Merchants" and "was able to secure default judgments [which] are enforced on a continuing basis by Friedman." (Dkt. No. 54 at 14.) This argument does not hold water. The challenged conduct relates squarely to Friedman's representation of his client, as opposed to the financial management of his firm. Thus, Plaintiffs' claims are based on conduct that is not actionable under the WCPA.

*Linehan v. Allianceone Receivables Mgmt.*, Inc., No. C15-1012-JCC, 2016 WL 5944564, at *3 (W.D. Wash. Oct. 13, 2016).

Likewise, here, the only conduct alleged against Patenaude is that it issued garnishments within a judicial action against someone with the same name as Fernando Frias. Frias's allegations do not implicate the financial management of Patenaude's law firm, and therefore he fails to support the CPA's trade or commerce element.

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

**c.      No public interest impact.**

2        Patenaude does not concede the public interest element of Plaintiff's CPA claim;

3  however, it is unlikely it would prevail on this element in a Rule 12(b)(6) motion to dismiss.

4  Therefore, Patenaude reserves on this element of the CPA claim.

5

**d.      No injury or proximate cause.**

6        To support the fourth and fifth elements of the *Hangman Ridge* test, a Plaintiff must

7  show injury to business or property, RCW 19.86.090, and "there must be some demonstration

8  of a causal link between the misrepresentation and the plaintiff's injury." *Indoor*

9  *Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 83, 170

10  P.3d 10, 22 (2007).   "A plaintiff must establish that, but for the defendant's unfair or deceptive

11  practice, the plaintiff would not have suffered an injury." *Id.*  Even a CPA claim based a *per se*

12  violation must establish that a plaintiff suffered injury as proximate result of the specific per se

13  violation.   *Blake*, 40 Wn. App. at 308.   "[P]ersonal injuries, including mental pain and

14  suffering, are not compensable under the Consumer Protection Act." *Leingang v. Pierce Cty.*

15  *Med. Bureau, Inc.*, 131 Wn.2d 133, 158, 930 P.2d 288, 300 (1997).   There was no injury to

16  business or property arising from the receipt of these garnishment papers. *Kwan v. Clearwire*

17  *Corp.*, 2010 WL 11684293, at *3 (W.D. Wash. Feb. 22, 2010) (dismissing RCW 19.16.250(12)

18  claim where no injury specifically from the alleged communication alleged).

19        A bare alleged procedural violation in itself may not cause any injury.   For example,

20  in *Paris v. Steinberg*, 828 F. Supp. 2d 1212 (W.D. Wash. 2011), the Court determined on a

21  Rule 12(b)(6) motion that, while a lawyer was not "categorically exempt" from the CAA, the

22  failure of a lawyer to have a collection agency license was not, in itself, the cause of any

23  damage to the plaintiff.   *Id.* at 1217.   *See also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550,

24  194 L. Ed. 2d 635 (2016) (bare procedural violations of the Fair Credit Reporting Act, without

25  showing of actual injury, did not give rise to Article III standing).

Likewise, in *Flores v. Rawlings Co., LLC*, 117 Hawaii, 153, 177 P.3d 341 (2008) (discussed with approval in *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 204 P.3d 885 (2009)), plaintiffs brought a CPA claim alleging the defendant unlawfully engaged in unregistered collection activities, a per se violation of the state CPA. The defendant attempted to collect on a healthcare provider's claim for reimbursement of medical expenses. The plaintiffs alleged they were injured because they made payment in response to the unlawful collection notices. The court concluded they were not injured, because they did not pay more than they actually owed. *Panag* noted that in *Flores,* the only deceptive practice at issue was engaging in unregistered collection activities. But the court concluded that the actions taken by the unregistered collection agency was not causally related to the alleged injury. *Panag* adopted *Flores*, which establishes that violation of the CPA requires some causal relationship between the unfair or deceptive trade practice and the alleged injury to support a private right of action.

Frias was not causally injured by receiving garnishment papers that he knew were directed to someone that had a different social security number from him.

### G.   Injunctive Relief [Count 7] is a remedy, not a cause of action, and would be inappropriate here where there is a complete remedy without it.

Frias alleges RCW 19.86.090 injunction as a cause of action.  (Dkt 1-1 at ¶¶ 50-52). This "count" fails on a number of grounds.

#### 1.   An injunction under RCW 19.86.090 is a remedy, not a cause of action, so it should be dismissed as a "Count" in the complaint.

"Washington does not recognize a standalone claim for injunctive relief, but rather views an injunction as a form of relief available for some causes of action." *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1151 (W.D. Wash. 2017) (citing *Hockley v. Hargitt*, 82 Wash.2d 337, 510 P.2d 1123, 1132 (1973) (distinguishing between a cause of action based on the CPA and the forms of relief that are potentially available, including

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO RULE 12(B)(6) - 17
2:20-cv-00805-JCC
6694386.doc

LEE•SMART
P.S., Inc. • Pacific Northwest Law Offices
1800 One Convention Place • 701 Pike Street • Seattle • WA • 98101-3929
Tel. 206.624.7990 • Toll Free 877.624.7990 • Fax 206.624.5944

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

damages and an injunction); *Robinson v. Wells Fargo Bank Nat'l Ass'n*, No. C17–0061JLR, 2017 WL 2311662, at *5 (W.D. Wash. May 25, 2017) ("Injunctive relief is available only if [the plaintiff] is entitled to such a remedy on an independent cause of action").  "An injunction is distinctly an equitable **remedy** and is frequently termed the strong arm of equity, or a transcendent or extraordinary **remedy**, and is a **remedy** which should not be lightly indulged in, but should be used sparingly and only in a clear and plain case." *Bellevue Square, LLC v. Whole Foods Mkt. Pac. Nw., Inc.*, Wn. App.2d 709, 432 P.3d 426, 430 (2018), *rev. denied*, 193 Wn.2d 1024, 448 P.3d 54 (2019) (emphasis added).

Since an injunction under RCW 19.86.090 is a remedy under the CPA, and Washington does not recognize a standalone claim for injunctive relief, this Court should dismiss Count 7 as a separate cause of action.

>          **2.**     **Frias lacks Article III standing for an injunction where he has no continuing relationship with Patenaude.**

When a case is in federal court, a request for an injunction, even one sought under the RCW 19.86.090, must demonstrate "a real and immediate threat that he would again suffer the injury to have standing for prospective equitable relief" to satisfy Article III standing requirements. *Lackey v. Ray Klein, Inc.*, No. C19-590-RSM, 2019 WL 3716454, at *4 (W.D. Wash. Aug. 7, 2019) (citing *Hardie v. Countrywide Home Loans Servicing LP*, No. C08-1286RSL, 2008 WL 8801053, at *2 (W.D. Wash. Dec. 8, 2008); *Bunch v. Nationwide Mut. Ins. Co.*, No. C12-1238JLR, 2012 WL 12846993, at *3 (W.D. Wash. Sept. 12, 2012) (Plaintiff must have Article III standing to pursue CPA injunction in case removed to federal court). A plaintiff has no Article III standing to pursue an injunction claim under RCW 19.86.090 in federal court where parties have ended their relationship and there is no immediate threat of recurring injury to plaintiff.  *Id*. (citing *Contra Hardie*, 2008 WL 8801053, at *2).   Here, there is no continuing relationship between Patenaude and Frias, and no chance Frias will be the

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO RULE 12(B)(6) - 18
2:20-cv-00805-JCC
6694386.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1
2
subject of another garnishment by Patenaude for the judgment debtor Fernando Frias with a different social security number.  Therefore, Frias lacks standing to seek an injunction.

3
4
5
6
7
Even though Frias has no Article III standing to seek an injunction at this point, he still may have standing to maintain his other CPA claims in this Court.  *Bunch*, 2012 WL 12846993, at *3-4 (because plaintiff no longer had a policy with the defendant insurance company, she lacked standing to seek an injunction, but the district court still maintained jurisdiction to decide the remaining CPA claims).

8
9
10
11
12
13
14
15
16
17
In *Garza v. Nat'l R.R. Passenger Corp.*, 418 F. Supp. 3d 644 (W.D. Wash. 2019), the defendant, Amtrak, moved to dismiss plaintiffs claims on the ground that: (1) plaintiff failed to establish injury to her business or property, and that plaintiff lacked standing to seek injunctive relief, id. at 5–7, and failed to establish at least three of the five elements of the *Hangman Ridge* test.  *Id*. at 651.  Amtrak argued that the plaintiff did not have standing to seek injunctive relief because any claim as to future injury was speculative.  *Id*. at 654.  Amtrak argued that there was "no reasonable basis for [Garza] to speculate that [the train accident] will (or even could) repeat, and result in future harm to Garza - or anyone." *Id*.  The Court dismissed the plaintiff's claim for injunctive relief, holding: "

18
19
> … the Court agrees with Amtrak that Garza is similarly situated to the plaintiff in *Lyons* in that she has identified future events—train rides—that may involve a likelihood of injury or death but has failed to allege or submit facts establishing that she will ever subject herself to any of those events.

20
*Garza*, 418 F. Supp. 3d at 655

21
22
23
24
Plaintiff has no non-speculative allegations to suggest that the error that occurred here (i.e., mistakenly sending garnishment papers to someone with the same first and last name) was likely to happen again.  Again, an injunction is not proper in this situation where there is a lack of Article III standing as to this issue.

25

LEE · SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

Likewise, there is no standing to seek an injunction to the extent CPA claims based on damages are dismissed, since the "business or property," proximate cause limitations apply to preclude injunctive relief when the threatened injury is too remote or indirect." *See Nw. Laborers-Employers Health & Sec. Tr. Fund v. Philip Morris, Inc*., 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999) (citing *Blewett*, 86 Wn App. at 790, 938 P.2d 842; *Parks v. Watson*, 716 F.2d 646, 662 (9th Cir.1983) (plaintiff must show "threatened loss or injury cognizable in equity proximately resulting from the alleged antitrust violation")).  Thus, to the extent this Court dismisses CPA claims seeking damages, and the injunction claims are speculative, an injunction should not be issued.

### 3. The remedy of injunction is not available to the extent any CPA claims are dismissed.

It should go without saying that, since injunction is a remedy for violations of the CPA, if the CPA claims fail, there is no basis on which to issue an injunction.  As reflected in this brief, CPA claims fail, so that the injunction remedy should also fail.

### 4. The Court should deny claims for an injunction because: (1) it would seek to prevent Patenaude from making a mistake between people of the same name, so it makes no sense, (2) is statistically a rare event that does not call for an injunction, and (3) there is a remedy at law available for actual violations, so an injunction would be improper.

"An injunction is an extraordinary equitable remedy designed to prevent serious harm. Its purpose is not to protect a plaintiff from mere inconveniences or speculative and insubstantial injury." *Bellevue Square,* 432 P.3d at 430 (citing *Tyler Pipe*, 96 Wn.2d at 796, 638 P.2d 1213).  Injunctive relief is not warranted "where there is a plain, complete, speedy and adequate remedy at law." *Id.* (citing *Tyler Pipe*, 96 Wn.2d at 791, 638 P.2d 1213).  One who seeks relief by permanent injunction must show: (1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts

LEE · SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

complained of are either resulting in, or will result in, actual and sustained injury to him. *Tyler v. Van Aelst*, 9 Wn. App. 441, 443, 512 P.2d 760, 762 (1973).

Here, "Plaintiff seeks an injunction prohibiting Defendant from its unlawful collection tactics, including repeatedly attempting to enforce judgments against individuals other than the actual debtor (simply by virtue of having a similar name)." (Dkt 1-1 at ¶ 54).  In other words, Plaintiff wants this court to enter an injunction prohibiting it from mistakenly garnishing someone with the same name.  This is not an injunction that should be entered.  Patenaude has no incentive to make mistakes, and certainly the odds of this mistake happening a substantial number of times must be miniscule.  An injunction would serve no purpose here.

In his Complaint, Frias cites *Scott v. Cingular Wireless*, 160 Wn. 2d 843, 853 (2007). *Scott* is easily distinguishable from this case.  First, unlike this case, *Scott* was brought as a class action, so the Plaintiff was a representative for a great many people.  Here, there is only a nominal chance that Patenaude would make the same mistake as to two people with the same first and last name.   The type of conduct in *Scott* was also something subject to easy replication.  *See Scott*, 160 Wn.2d at 847, 161 P.3d at 1002 (plaintiffs filed "a class action suit against Cingular Wireless alleging that Cingular had overcharged consumers between $1 and around $45 per month by unlawfully adding roaming and hidden charges"). Again, there is only a nominal chance that Patenaude would make the same mistake as to two people with the same first and last name.

To the extent Frias can show a violation of the CPA, he has a complete remedy at law for any alleged violations.  He cannot show any imminent, or even potential harm in the future.  Indeed, any allegation that Patenaude would inadvertently send garnishment papers to the wrong person with the same first and last name as a different judgment debtor is highly speculative, and unlikely to occur again.  No injunction should be issued on these allegations.

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO RULE 12(B)(6) - 21
2:20-cv-00805-JCC
6694386.doc

LEE · SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

**H.      Plaintiff has no basis for claims of $2000 per violation, which may only be
sought by the AGO, and Plaintiff's counsel is well aware of this.**

2

Plaintiff requests statutory penalties under RCW 19.86.140.   (Dkt 1-1 at 9 ¶ 3).

3

Washington law is unambiguous that the $2,000 penalty provided for in the CPA is only

4

available in action brought by the Attorney General.

5

> The parameters of a private individual's relief under the Consumer Protection
> Act are set forth in RCW 19.86.090, *E.g.,* to enjoin violations of the Consumer
> Protection Act, and to recover actual damages, costs of suit and reasonable
> attorney's fees. Hence, the recipient of the civil penalty envisaged in
> RCW 19.86.140 is not a private individual, but rather the State.

6

7

8

*Stigall v. Courtesy Chevrolet-Pontiac, Inc.*, 15 Wn. App. 739, 740–41, 551 P.2d 763, 764–65

9

(1976).

10

Following *Stigall*, the Washington Supreme Court specifically held that "under

11

RCW 19.86.140, every person who is liable to private parties for violations of RCW 19.86.020,

12

.030 or .040 is also subject to a civil penalty **if sought by the Attorney General**." *Aungst v.*

13

*Roberts Const. Co.*, 95 Wn.2d 439, 442, 625 P.2d 167, 169 (1981) (emphasis added) (citing

14

*Stigall*, 15 Wn. App. at 740-41).  Plaintiff asserts a "per violation" $2000 statutory civil penalty

15

for each alleged breach of the CAA and CPA. (Dkt 8-1 at 8 ¶ 6.1(e)).  This Court should

16

dismiss Plaintiff's damage claim under RCW 19.86.140, since the law is clear that only the

17

Attorney General, not private individuals, may seek this civil penalty.

18

The judge in this very case, in another case brought by this same Plaintiff's counsel,

19

held that such penalties are available only to the AGO, and not private parties.  *See Dawson v.*

20

*Genesis Credit Mgmt., LLC*, No. C17-0638-JCC, 2017 WL 5668073, at *5–6 (W.D. Wash.

21

Nov. 27, 2017).  It is unfair and deceptive to include these demands for significant penalties in

22

prayers for relief, as it can only be intended to scare defendants into settling, by making

23

defendants believe the value of a case is much higher than it actually is.  A debt collector would

24

25

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO RULE 12(B)(6) - 22
2:20-cv-00805-JCC
6694386.doc

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

be subject to a lawsuit for such a false representation.  The Court should strike these claimed penalties from the prayer for relief, should any cause of action remain after this motion.

**I.      Dismissal should be with prejudice, since amendment is futile.**

On a Rule 12(b)(6) motion, the Court can dismiss a plaintiff's claims with prejudice where amendment of the pleadings would be futile.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  "Futility alone can justify the denial of a motion to amend." *Id*. (citing *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir.2003)).  Here, amendment of the pleadings would be futile because Frias's claims are barred by such things as judicial-action privilege, statute of limitations, and Washington public policy; and no pleading will change that.  As such, dismissal with prejudice is appropriate.

**IV.  CONCLUSION**

Patenaude requests that this Court dismiss Plaintiff's complaint with prejudice for the reasons set forth herein.

DATED this 8th day of July, 2020.

LEE SMART, P.S., INC.

By: /s Marc Rosenberg
    Marc Rosenberg, WSBA No. 31034
    Of Attorneys for Defendant
    Patenaude & Felix, A.P.C.

    1800 One Convention Place
    701 Pike St.
    Seattle, WA 98101-3929
    (206) 624-7990
    mr@leesmart.com

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on the date provided at the signature below, I electronically filed

3

the preceding document with the Clerk of the Court using the CM/ECF system, which will send

4

notification of such filing to the following individuals:

5

    Mr. Jason D. Anderson                   Jason@alkc.net

6

    Mr. T. Tyler Santiago                     Tyler@alkc.net

7

    I certify under penalty of perjury under the laws of the State of Washington that the

8

foregoing is true and correct, to the best of my knowledge.

9

    Dated this 8th day of July, 2020 at Seattle, Washington.

10

11

                          LEE SMART, P.S., INC.

12

                          By:  /s Marc Rosenberg
                               Marc Rosenberg, WSBA No. 31034

13

                               Of Attorneys for Defendant
                               Patenaude & Felix, A.P.C.

14

                               1800 One Convention Place

15

                               701 Pike St.
                               Seattle, WA 98101-3929

16

                               (206) 624-7990
                               mr@leesmart.com

17

18

19

20

21

22

23

24

25

DEFENDANT'S MOTION TO DISMISS PURSUANT
TO RULE 12(B)(6) - 24
2:20-cv-00805-JCC
6694386.doc

L E E · S M A R T

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944