THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FERNANDO FRIAS, | CASE NO. C20-0805-JCC |
| Plaintiff, | ORDER |
| v. | |
| PATENAUDE & FELIX, A.P.C., | |
| Defendant. | |

This matter comes before the Court on Defendant Patenaude & Felix, A.P.C.'s motion to dismiss (Dkt. No. 10). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

I.   BACKGROUND

Defendant Patenaude & Felix, A.P.C. ("P&F") sent a letter to Plaintiff Fernando Frias in August 2019 informing him that the King County Maleng Justice Center entered judgment against him, and that P&F was serving him with an order for writ of garnishment.[1] (Dkt. No. 1-1

---

[1] The Court may consider the documents Mr. Frias attached to the complaint without converting P&F's motion to a motion for summary judgment either because they are "written instruments" within the meaning of Federal Rule of Civil Procedure 10(c) or because they are incorporated by reference because Mr. Frias refers to them extensively in his complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

at 2, 12.) Attached to the letter were several court documents referring to a $5,786.47 judgment based on unpaid debt and Mr. Frias's name, address, employer's name and mailing address, a Discover Bank account, and a social security number ending in 4970. (*Id.* at 13–22.) The court documents explained that Mr. Frias's wages would be garnished. (*Id.* at 20.)

In response, Mr. Frias retained an attorney who sent P&F a letter eleven days later disputing the debt and informing P&F that Mr. Frias was not in default with Discover Bank and that his social security number did not end in 4970. (*Id.* at 3, 24–27.) Mr. Frias's attorney instructed P&F to "cease all communication with [Mr. Frias] in regard to the debt" and warned the firm "not [to] contact any third parties regarding the debt." (*Id.* at 24–25.) Just over six months later, without acknowledging or responding to the letter, P&F sent Mr. Frias a second letter and garnishment packet that were nearly identical to the first, except this garnishment was directed at Mr. Frias's bank account rather than his wages. (*Id.* at 3–4, 29–40.)

Mr. Frias alleges that these communications violated several provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and are per se violations of Washington's Consumer Protection Act, Wash. Rev. Code § 19.86.020, because they violate Washington's Collection Agency Act ("CAA"), Wash. Rev. Code § 19.16.250. P&F moves to dismiss all of Mr. Frias's claims. (Dkt. No. 10.)

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

//

## III. DISCUSSION

### A. FDCPA Claims

The FDCPA "prohibits 'debt collectors' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). To plead an FDCPA claim, Mr. Frias must allege that P&F is a debt collector under 15 U.S.C. § 1692a(6) and that P&F violated one of the FDCPA's substantive provisions. 15 U.S.C. 1692k(a); *see also Stimpson v Midland Credit Mgmt., Inc.*, 944 F.3d 1190, 1195 (9th Cir. 2019). Mr. Frias alleges that P&F is a debt collector and that it violated the FDCPA by making "false, deceptive, or misleading representation[s]," 15 U.S.C. § 1692e, using "unfair or unconscionable means to collect or attempt to collect [a] debt," 15 U.S.C. § 1692f, and improperly communicating with Mr. Frias despite knowing that he was represented, 15 U.S.C. § 1692c(a)(2). P&F moves to dismiss, arguing that all of these claims fail as a matter of law.

P&F's motion is based on a constantly shifting version of the facts. In moving to dismiss some Mr. Frias's claims, P&F argues that it was clear to Mr. Frias that P&F "was trying to collect from someone else." (Dkt. No. 10 at 7.) In moving to dismiss others, P&F argues that it was attempting to collect from Mr. Frias. (*See id.* at 7–11.) But at this stage of the litigation the Court must accept Mr. Frias's allegations as true, and Mr. Frias alleges that P&F "attempted to garnish [his] wages" and "his account at Chase Bank." (Dkt. No. 1-1 at 2, 4.) Therefore, the Court must analyze the complaint based on those allegations.

Similarly, many of P&F's arguments appear to be premised on the assumption that P&F attempted to garnish Fernando Frias by mistake, and that it should not be held liable for making a mistake. But this argument would fail even if the Court could infer from Mr. Frias's allegations that P&F attempted to garnish Mr. Frias by mistake. The FDCPA is, for the most part, a strict liability statute, and debt collectors are generally liable for violations even if they are not knowing or intentional. *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175–77 (9th Cir. 2006). There is an exception for bona fide errors when the debt collector maintains

procedures reasonably adapted to avoid those errors, but that exception is an affirmative defense on which the debt collector bears the burden of proof. 15 U.S.C. § 1692k(c); *see Clark*, 460 F.3d at 1176–77. The Court may not dismiss a complaint based on an affirmative defense at the motion to dismiss stage unless the face of the complaint establishes the defense. *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Mr. Frias's complaint does not allege that P&F maintained procedures reasonably adapted to avoid the type of error that occurred here. Therefore, Mr. Frias's complaint does not establish the bona fide error defense, and whether P&F's violations were intentional is not relevant to the Court's analysis of the sufficiency of Mr. Frias's complaint.

       1.   Counts 1 and 2: 15 U.S.C. § 1692e and 15 U.S.C. § 1692f

Mr. Frias alleges that P&F made several false, deceptive, or misleading representations in the documents it sent, in violation of Section 1692e, and used unfair or unconscionable means to collect the debt, in violation of Section 1692f. (Dkt. No. 1-1 at 6–7.) P&F argues that it did not violate these provisions because Mr. Frias "knew he was not the actual judgment debtor," and "[e]ven the least sophisticated consumer would know that [P&F] was trying to collect from someone else" because Mr. Frias's social security number did not match the social security number in the garnishment papers. (Dkt. No. 10 at 4, 7.)

When analyzing whether a communication violates Section 1692e or 1692f, the Court examines whether the communication is "likely to deceive or mislead a hypothetical 'least sophisticated debtor.'" *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (quoting *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). This is an objective test that does not take into account the characteristics of the actual recipient of the communication. *Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055, 1061–62 (9th Cir. 2011). The least sophisticated consumer standard applies even if the actual recipient of the communication is "unusually savvy," *id.* at 1062, and is not "actually . . . misled or deceived by the debt collector's representation," *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1117

(9th Cir. 2014). Thus, what *Mr. Frias* believed is irrelevant. Instead, the Court must examine how the least sophisticated consumer would have understood P&F's communications.

In the Ninth Circuit, whether the least sophisticated consumer would be deceived or misled is a question of law. *Gonzales*, 660 F.3d at 1061. "The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Id.* (quoting *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997)). The "[least sophisticated] debtor is comparatively uninformed and naive about financial matters and functions as an 'average consumer in the lowest quartile (or some other substantial bottom fraction) of consumer competence.'" *Stimpson*, 944 F.3d at 1196 (quoting *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007)). Although the least sophisticated consumer is financially unsophisticated, the person is not literally "the *least* intelligent consumer in this nation of 300 million people," *id.* at 1196 (quoting *Evory*, 505 F.3d at 774), and does not adopt "bizarre, idiosyncratic, or peculiar misinterpretations" of the communications, *Gonzales*, 660 F.3d at 1062.

The first set of documents P&F sent Mr. Frias contained his name, home address, employer's name and mailing address, and the name of a financial institution at which Mr. Frias had an account.[2] (Dkt. No. 1-1 at 13–22.) The second set contained the same information but substituted his bank for his employer. (*Id.* at 29–40.) An unsophisticated consumer receiving these documents would conclude that P&F was attempting to garnish his wages. While the least sophisticated consumer would likely notice that the social security number in the documents did not match his social security number, that consumer would be unlikely to conclude that P&F "was trying to collect from someone else." (Dkt. No. 10 at 7.) Debt collectors do not generally notify random people that they are collecting debts from others, and P&F does not offer any

---

[2] The parties refer to a Discover Bank account ending in 6743, but the documents P&F sent Mr. Frias do not refer to a Discover Bank account number, nor do they contain the number 6743. (*See* Dkt. No. 1-1 at 13–22, 29–40.) Therefore, the Court does not consider this alleged account number when analyzing how an unsophisticated consumer would interpret these documents.

reason why a consumer would conclude that P&F was doing so here.[3] Rather, P&F appears to argue that an unsophisticated consumer in Mr. Frias's position would have concluded that P&F was trying to garnish someone else but sent the garnishment packet to him by mistake. But faced with several pieces of information pointing to him (his name, address, employer's name and address, and the name of a financial institution at which he had an account) and only one pointing to another person (the social security number), an unsophisticated consumer is more likely to conclude that the social security number was inaccurate, rather than all of the other information, or that P&F was trying to collect from him even though someone else owed the debt.

Under either interpretation, P&F's actions violate the FDCPA. First, the Court concludes that attempting to garnish a consumer's wages or bank account when the consumer does not owe the debt is an "unfair or unconscionable means to . . . attempt to collect [a] debt" under Section 1692f. Second, although it is true that P&F was attempting to garnish Mr. Frias's wages—at least based on Mr. Frias's allegations—several of the statements and implications in the documents P&F sent to Mr. Frias were false. For example, the documents suggested that Mr. Frias owed over $5,300 to Discover Bank when, in fact, he did not. Therefore, Mr. Frias has stated a claim under Section 1692e.[4]

   2. Count 3: 15 U.S.C. § 1692c

Mr. Frias alleges that by sending him the second garnishment packet, P&F also violated 15 U.S.C. § 1692c(a)(2), which generally prohibits debt collectors from contacting consumers they know are represented by attorneys. (Dkt. No. 1-1 at 7.)  P&F argues that the Court should dismiss this claim because P&F's communication falls within Section 1692c(a)'s "express

---

[3] Debt collectors are generally prohibited from contacting third parties about consumers' debts. 15 U.S.C. § 1692c(b).

[4] Because the Court concludes that Mr. Frias's Section 1692e and 1692f claims survive, the Court declines to compare every individual statement Mr. Frias identifies in his complaint with every FDCPA subsection he cites.

permission" exception and Section 1692c(c)'s remedy exceptions. (Dkt. No. 10 at 7–9.) Both arguments fail.

P&F argues that its communication with Mr. Frias falls within Section 1692c(a)'s express permission exception because a Washington statute required it to mail copies of these documents to Mr. Frias. (*See id*.) The Court is not persuaded. The exception P&F cites requires the "express permission of a court of competent jurisdiction," and P&F has not identified any such permission. 15 U.S.C. § 1692c(a). P&F cites a Seventh Circuit case holding that a court rule requiring service directly on a party may constitute express permission of a court of competent jurisdiction, *Holcomb v. Freedman Anselmo Lindberg, LLC*, 900 F.3d 990, 992–93 (7th Cir. 2018), but that holding does little to help P&F here because P&F cites to a *statute* requiring direct service rather than a court rule. Statutes, of course, are passed by the legislature and signed into law by the Governor. Thus, a statute does not constitute "permission of a court of competent jurisdiction." See *Ojogwu v. Rodenburg Law Firm*, 2019 WL 6130450, slip op. at 2–3 (D. Minn. 2019) (holding that state statute requiring service of garnishment papers on debtor did not fall within Section 1692c(a)'s express permission exception).

Further, P&F's Section 1692c(a) argument would fail even if the statute it cites were a court rule because the statute did not authorize P&F to send the garnishment packet to Mr. Frias. That statute provides that when a court issues a writ under judgment, the judgment creditor must mail a copy of certain documents "to the judgment debtor, by certified mail, addressed to the last known post office address of the judgment debtor." Wash. Rev. Code § 6.27.130(1). Here, Mr. Frias alleges that he was *not* the judgment debtor, but P&F sent him the documents anyway. (Dkt. No. 1-1 at 2–5.) Therefore, P&F did not comply with the statute it cites, and P&F has not identified any statute or court rule granting it permission to send a garnishment packet to a third party that is not the judgment debtor. Therefore, P&F's communication does not fall within Section 1692c(a)'s express permission exception.

P&F also argues that its second communication with Mr. Frias falls within Section

ORDER
C20-0805-JCC
PAGE - 7

1692c(c)'s remedy provisions, which allow a debt collector to notify a consumer that it may invoke certain remedies even after the consumer has requested that the debt collector cease communications. *See* 15 U.S.C. § 1692c(c)(2)–(3). While P&F is correct that its second communication with Mr. Frias falls within Section 1692c(c)(2) or (3), the Court disagrees that those provisions exempt a debt collector from complying with Section 1692c(a)(2).

First, Section 1692c's text and structure suggest that Section 1692c(c)(2)–(3) do not apply to Section 1692c(a). "Subsections (a) and (c) are independent prohibitions on communication, triggered by separate and distinct conditions." *Crouch v. J.J. Marshall & Assocs., Inc.*, 2007 WL 3173975, slip op. at 3 (W.D. Mich. 2007). Subsection (a) prohibits debt collectors from contacting consumers at unusual times or places, at work under certain circumstances, or when the debt collector knows a consumer is represented by an attorney. Subsection (c) prohibits debt collectors from contacting consumers that have informed the debt collector, in writing, that they refuse to pay the debt or that they wish the debt collector to cease further communications. "This structure, by itself, indicates that the exceptions in each subsection apply only within that subsection." *Ojogwu*, 2019 WL 6130450, slip op. at 4. If Congress had intended for the exceptions in subsection (c) to apply to the prohibitions in subsection (a), it would have included all of the prohibitions in one subsection along with all of the exceptions. The fact that it divided the prohibitions into two subsections, each of which contains a different set of exceptions, suggests that the exceptions apply only within their respective subsections.

The Ninth Circuit has also interpreted the statute this way. In *Clark*, the Ninth Circuit analyzed whether the FDCPA allows a debt collector to respond to a debtor's telephone call after the debtor requests that the debt collector cease communications under subsection 1692c(c). *See* 560 F.3d 1167–68. When the Court examined the text of the statute to determine whether any exceptions applied, it looked only to the exceptions in subsection (c) and concluded that "[n]one of those exceptions provide that a debt collector may contact a consumer at the consumer's

request." *Id.* at 1169. The Court never looked to the exceptions in subsection (a). If it had, it would have applied subsection (a)'s exception allowing for communications with the "prior consent of the consumer given directly to the debt collector." Instead, the Court looked beyond the text of the statute to its purpose to conclude that a debtor who has invoked Section 1692c(c) can waive its protections. *Clark*, 460 F.3d at 1169–72.

Finally, applying subsection (c)'s exceptions to subsection (a) would lead to absurd results that are inconsistent with the purposes of the statute. If the exceptions in subsection (c) were to apply to the prohibitions in subsection (a), there would be no textual basis for applying them to subsection (a)(2) but not subsections (a)(1) and (a)(3). If subsection (c)'s remedy provisions applied to those subsections, a debt collector could contact a debtor after 9 p.m. or before 8 a.m., as long as the purpose of the call was to notify the consumer that the creditor might invoke certain remedies. Similarly, a debt collector could call the consumer at work, even if the debt collector knew that the consumer's employer prohibited the consumer from receiving such communications. Nothing in the text, structure, or purposes of the FDCPA suggests that Congress intended such a result.

For the foregoing reasons, the Court DENIES P&F's motion to dismiss Mr. Frias's Section 1692c(a)(2) claim.

**B. Consumer Protection Act Claims**

Mr. Frias alleges that P&F violated Washington's Consumer Protection Act when it violated several provisions of Washington's Collection Agency Act. (Dkt. No. 1-1 at 5–6, 8–9.) P&F argues that the Court should dismiss Mr. Frias's CPA claims because they are barred by Washington's judicial action privilege and Washington public policy, Mr. Frias does not allege all of the elements of a CPA claim, and the facts Mr. Frias alleges do not show that P&F violated the provisions he cites. (*See* Dkt. No. 10 at 11–17.)

1. Judicial Action Privilege & Washington Public Policy

P&F argues that the Court should dismiss Mr. Frias's CPA claims under Washington's

judicial action privilege, which provides that "attorneys and law firms have absolute immunity from liability for acts arising out of representing their clients," (Dkt. No. 10 at 12 (quoting *Jeckle v. Crotty*, 85 P.3d 931, 937 (Wash. Ct. App. 2004)), and because Washington public policy generally bars adversaries of a lawyer's client from suing the opposing lawyer, (*id.* at 13 (citing *Jeckle*, 85 P.3d at 937)). The Court has rejected P&F's judicial action privilege argument in the past, *Hoffman v. Transworld Sys., Inc.*, 2021 WL 22590, slip op. at 2–3 (W.D. Wash. 2021), and Mr. Frias argues that the privilege is narrower than P&F suggests, (*see* Dkt. No. 11 at 13–14). But the Court need not determine the scope of the judicial action privilege or Washington's public policy now because Mr. Frias's claims survive even under P&F's interpretation.

According to P&F, the judicial action privilege immunizes lawyers "from liability for acts arising out of representing their clients." (Dkt. No. 10 at 12.) But Mr. Frias does not allege that P&F sent him the garnishment packet as part of P&F's representation of a client. Mr. Frias alleges the opposite: that P&F was hired by Discover Card to collect a debt from a *different* Fernando Frias but wrongly attempted to garnish the plaintiff's wages and bank account. (Dkt. No. 1-1 at 2.) In other words, Mr. Frias never alleges that Discover Card hired P&F to attempt to collect the debt from someone who did not owe it. Therefore, based on the allegations in the complaint, the judicial action privilege does not apply, even under P&F's interpretation. For similar reasons, Washington public policy does not bar Mr. Frias's CPA claims. According to P&F, Washington public policy generally prohibits "adversaries of a lawyer's client" from suing "the opposing lawyer." (Dkt. No. 10 at 13.) Here, however, Mr. Frias alleges that he was *not* Discover Bank's "adversary" in the underlying garnishment proceedings, but P&F attempted to garnish his wages anyway. (Dkt. No. 1-1 at 2.) Therefore, Washington public policy does not bar Mr. Frias's CPA claims either.

  2. <u>CPA Elements</u>

P&F next argues that Mr. Frias fails to state a CPA claim. "[T]o prevail in a private CPA action . . . a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice;

(2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). P&F argues that Mr. Frias's allegations fail to meet the first, second, fourth, and fifth elements. (Dkt. No. 10 at 14–17.)

The Court can quickly dispense with P&F's argument that P&F sending Mr. Frias the garnishment packets did not cause him any injury cognizable under the CPA. Mr. Frias alleges that as a result of P&F attempting to garnish his wages, he retained counsel to "ascertain[] his legal rights and responsibilities." (Dkt. No. 1-1 at 5.) "Consulting an attorney to dispel uncertainty regarding the nature of an alleged debt" is a cognizable injury under the CPA. *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 902 (Wash. 2009). Therefore, Mr. Frias's allegations satisfy the causation and injury elements.

Because Mr. Frias asserts per se CPA claims, whether Mr. Frias's complaint satisfies the first and second elements depends on whether he pled violations of the CAA. Whenever the legislature declares the violation of a statute to be an unfair trade practice, the violation of that statute automatically satisfies the first two elements of a CPA claim. *Hangman Ridge*, 719 P.2d at 535–36. The legislature has declared the violation of the CAA to be an "unfair act[] . . . in the conduct of trade or commerce." Wash. Rev. Code § 19.16.440. Therefore, whether Mr. Frias's CPA claims survive depends on whether the conduct he alleges P&F engaged in violates the CAA.

3. <u>Substantive CAA Allegations</u>

Mr. Frias alleges that P&F violated the CAA when it (1) communicated with Mr. Frias after his lawyer wrote P&F and instructed the firm to cease communications with him, in violation of § 19.16.250(12), (2) attempted to collect more than Mr. Frias owed, in violation of § 19.16.250(21), and (3) threatened to garnish Mr. Frias's wages when P&F could not legally take that action, in violation of § 19.16.250(16). These prohibitions apply to "licensee[s] or employee[s] of a licensee." Wash. Rev. Code § 19.16.250. A "licensee" is "any person licensed

under" the CAA. Wash. Rev. Code § 19.16.100(10). Mr. Frias alleges that P&F "is a licensed Collection Agency." (Dkt. No. 1-1 at 1). Although Mr. Frias does not expressly allege that P&F is licensed *under the CAA*, the Court reasonably infers that it is, since the CAA is the statute under which collection agencies are generally licensed. *See* Wash. Rev. Code § 19.16.110. Therefore, these provisions apply to P&F, and the Court must determine whether the conduct Mr. Frias alleges violated them.

       i.      *Count 4: Wash. Rev. Code § 19.16.250(12)*

Section 12 prohibits a licensee from communicating with a debtor "after notification in writing from an attorney representing such debtor that all further communications relative to a claim should be addressed to the attorney." Wash. Rev. Code § 19.16.250(12). Mr. Frias alleges that his attorney notified P&F in writing that P&F should "cease all communication with [Mr. Frias] in regard to the debt," but P&F contacted Mr. Frias directly anyway. (Dkt. No. 1-1 at 3–4, 24–25.) Although Mr. Frias's lawyer did not expressly state that all future communications should be directed to her, that is the clear implication of the letter because Mr. Frias's attorney requested that P&F send her documentation regarding the debt if the firm wished to continue to pursue Mr. Frias. (*Id.* at 24–25.) Therefore, Mr. Frias states a CPA claim for a violation of Section 12. P&F argues that this claim should be dismissed because Washington law required it to contact Mr. Frias directly, but as the Court explained earlier, that argument fails because the statute P&F cites did not authorize P&F to contact Mr. Frias, who was not the judgment debtor in the garnishment proceedings.

      ii.      *Count 5: Wash. Rev. Code § 19.16.250(21)*

Section 21 prohibits a licensee from "attempt[ing] to collect . . . any sum other than [principal], allowable interest, collection costs or handling fees . . . attorney's fees and taxable court costs." Wash. Rev. Code § 19.16.250(21). Mr. Frias alleges that P&F attempted to collect over $5,700 from him that he did not owe. (Dkt. 1-1 at 2–5, 8.) Therefore, Mr. Frias states a CPA claim for a violation of Section 21. P&F argues that it is not liable because it "was attempting to

collect from a different Fernando Frias." (Dkt. No. 10 at 9.) However, the Court's analysis at this stage of the litigation is based on *Mr. Frias's* allegations, not P&F's, and Mr. Frias alleges that P&F "attempted to garnish [his] wages" and "his account at Chase Bank." (Dkt. No. 1-1 at 2, 4.)

       iii.      *Count 6: Wash. Rev. Code § 19.16.250(16)*

Section 16 prohibits a licensee from "[t]hreaten[ing] to take any action against the debtor which the licensee cannot legally take at the time the threat is made." Wash. Rev. Code § 19.16.250(16). Mr. Frias alleges that P&F violated this provision by threatening to "garnish . . . Plaintiff's money . . . when it could not legally do so." (Dkt. No. 1-1 at 8.) P&F argues that it attempted to actually garnish Mr. Frias's wages and bank account, and taking an action is not the same as threatening to take an action. (Dkt. No. 10 at 10–11.) The Court agrees with P&F. The CAA is filled with detailed prohibitions. If the legislature wished to generally prohibit a licensee from "tak[ing] any action against the debtor" that the licensee could not "legally take at the time" it could have done so. It did not. Instead, the legislature chose to list the specific practices it wished to ban. Further, Section 19.16.250(11) shows that the legislature intended to distinguish between *threatening* to take an action and *actually* taking an action. That provision prohibits licensees from "[t]hreaten[ing] the debtor with impairment of his or her credit rating if a claim is not paid" but makes clear that "advising a debtor that the licensee has reported or intends to report a claim to a credit reporting agency is not considered a threat if the licensee actually has reported or intends to report the claim to a credit reporting agency." Wash. Rev. Code § 19.16.250(11). The same reasoning applies to section 16. Here, P&F advised Mr. Frias that it was actually *attempting* to garnish his wages. Therefore, the Court DISMISSES Mr. Frias's CPA claim based on Section 19.16.250(16).

    4.   <u>Injunctive Relief</u>

In "Count 7" of his complaint, Mr. Frias requests that the Court "enjoin Defendant from collecting debts in the manner described above." (Dkt. No. 1-1 at 9.) P&F argues that the Court should dismiss this "Count" for several reasons: an injunction is a remedy and not a cause of

action, Mr. Frias lacks Article III standing to seek an injunction, and Mr. Frias is not entitled to an injunction under state law. (Dkt. No. 10 at 17–21.)

First, P&F argues, and Mr. Frias concedes, that an injunction is a remedy and not a separate cause of action, so Mr. Frias's request for an injunction should be dismissed to the extent it is offered as an independent cause of action. The Court agrees and DISMISSES Mr. Frias's "Count" for an injunction to the extent it offered as an independent cause of action. Because Mr. Frias represents that he will amend his complaint to move his request for an injunction from a "Count" to his prayer for relief, the Court will address P&F's other arguments regarding the injunction in this order.

P&F's second argument is that Mr. Frias does not have Article III standing to seek an injunction because "there is no continuing relationship between [P&F] and Frias, and no chance Frias will be the subject of another garnishment by [P&F] for the judgment debtor Fernando Frias with a different social security number." (Dkt. No. 10 at 18–19.) The Court disagrees. To demonstrate standing to seek an injunction based "on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The Ninth Circuit has held that "[t]he possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." *Nicacio v. U.S. I.N.S.*, 797 F.2d 700, 702 (9th Cir. 1985) (overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999)). Mr. Frias alleges that P&F improperly attempted to garnish his wages *twice*, including after Mr. Frias's attorney contacted P&F and informed the firm that it was pursuing the wrong person. (Dkt. No. 1-1 at 2–4.) Therefore, Mr. Frias has demonstrated "that he is realistically threatened by a repetition" of P&F's allegedly unlawful debt collection tactics. *Lyons*, 461 U.S. at 109.

P&F's argument that the lack of an ongoing relationship means that there is no risk of future harm is misplaced. While the Court has concluded in some cases that a plaintiff that has

ended his or her relationship with a defendant was not at risk of future harm, those were cases in which the injury arose out of the parties' relationship. *See Bunch v. Nationwide Mut. Ins. Co.*, 2012 WL 12846993, slip op. at 1–2 (W.D. Wash. 2012) (holding that plaintiff was not at risk of future harm from defendant insurer because plaintiff was no longer insured by defendant); *Hardie v. Countrywide Home Loans Servicing LP*, 2008 WL 8801053, slip. op at 1–2 (W.D. Wash. 2008) (holding that plaintiff borrowers were not at risk of defendant loan servicer charging unauthorized fees again because they paid off their loans). Here, by contrast, Mr. Frias alleges that P&F attempted to garnish Mr. Frias's wages even though the parties never had a relationship. Therefore, the lack of an ongoing relationship provides no assurance that Mr. Frias is not at risk of future harm.

P&F argues that even if Mr. Frias has standing, he may not seek an injunction under the CPA because he has an adequate remedy at law and an injunction prohibiting P&F from mistakenly sending garnishment packets to the wrong person would "serve no purpose" since P&F "has no incentive to make mistakes." (Dkt. No. 10 at 20–21.) Neither argument is persuasive. The Washington Supreme Court squarely rejected P&F's first argument decades ago, when it held that a consumer may seek an injunction under the CPA even if he "could be made whole by a money judgment." *Hockley v. Hargitt*, 510 P.2d 1123, 1132 (Wash. 1973). P&F's second argument depends, once again, on the Court accepting its version of the facts: specifically, that it garnished Mr. Frias by mistake. That may turn out to be true, but at this stage of the litigation, the Court must accept Mr. Frias's allegations as true, and Mr. Frias never alleges that P&F garnished him by mistake. Therefore, Mr. Frias may seek an injunction under the CPA.

   5. <u>Civil Penalties</u>

P&F argues that the Court should strike Mr. Frias's request for civil penalties under the CPA because civil penalties are not available to private litigants. (Dkt. No. 10 at 22.) P&F is correct. *Stigall v. Courtesy Chevrolet-Pontiac, Inc.*, 551 P.2d 763, 764–65 (Wash. Ct. App. 1976). Therefore, the Court STRIKES Mr. Frias's request for civil penalties under the CPA.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part P&F's motion to dismiss (Dkt. No. 10.) The Court STRIKES Mr. Frias's request for civil penalties, DISMISSES his "Count" for injunctive relief without prejudice, and DISMISSES his CPA claim based on P&F's alleged violation of Washington Revised Code § 19.16.250(16) without prejudice. Mr. Frias may amend the complaint to address the deficiencies identified above within 14 days of the date of this order. The Court is astounded by P&F's stunning lack of appreciation for how irresponsible its conduct in this matter has been.

DATED this 30th day of March 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE