THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FERNANDO FRIAS, | CASE NO. C20-0805-JCC |
| Plaintiff, | ORDER |
| v. | |
| PATENAUDE & FELIX APC, | |
| Defendant. | |

This matter comes before the Court on Plaintiff's motion for partial summary judgment on liability and Defendant's cross motion for summary judgment. (Dkt. Nos. 33, 34.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Plaintiff's motion and DENIES Defendant's motion for the reasons explained below.

I.  BACKGROUND

In August 2019, Plaintiff Fernando Frias received a letter from Matthew Cheung, a lawyer at the defendant law firm Patenaude & Felix, A.P.C. ("P&F"). (Dkt. No. 33-1 at 8.) Mr. Cheung wrote that P&F's client, Discover Bank, had a judgment against Plaintiff and that "[w]e have notified you in writing asking to you please contact our office. To date, we have not been able to resolve this matter with you." (*Id.*) The letter came to Plaintiff's home address on Trenton Street in Seattle. (*Id.* at 2, 8). Enclosed were a writ of garnishment to the University of

Washington, Plaintiff's employer, and a state court judgment against "Fernando Frias" in favor of Discover Bank for $5,786.47. (*Id.* at 1, 9, 13–15.) The Fernando Frias who apparently owed money to Discover Bank ("Debtor Frias") is not Plaintiff; they are different people with different social security numbers. (*See, e.g.*, Dkt. No. 33-1 at 20.)

Anxious and confused, Plaintiff hired a lawyer. (*Id.* at 2–3). Plaintiff's lawyer sent a letter (by email) to Mr. Cheung explaining that P&F had the wrong person and must cease communication with Plaintiff, his employer, or anyone else regarding the debt owed by Debtor Frias. (*Id.* at 20–23.) Mr. Cheung admits he received this letter but does not recall whether he responded. (Dkt. No. 33-2 at 21.) He testified as P&F's Rule 30(b)(6) designee that he added a note to the Frias account in P&F's system indicating that he had received an email from a lawyer representing Plaintiff Frias, who lives at the address P&F had mailed, but has a different social security number than Debtor Frias. (*See* Dkt. No. 35-8 at 12–13.)

Despite this, in early 2020, P&F sought and obtained a second writ of garnishment for Plaintiff's income. (*See* Dkt. No. 33-1 at 26–31.) And P&F again wrote to Plaintiff, attaching the new garnishment papers. (*Id.* at 25.) This time the garnishee was Chase Bank, where Plaintiff has an account. (*Id.* at 26) As with the 2019 mailing, Mr. Cheung signed both the writ and the letter to Plaintiff in the 2020 mailing. (*See id.* at 25, 27.)

P&F's misdirected attempts to garnish Plaintiff's funds were unsuccessful; both garnishees refused to comply because Debtor Frias's personal details did not match Plaintiff's. (*See* Dkt. Nos. 35-2 at 3; 35-10 at 1.)

P&F explains that it contacted Plaintiff only because, sometime before the events above, it had tried contacting Debtor Frias, but the mail came back undeliverable. (Dkt. No. 33-2 at 5.) So P&F did a public record search (called a skip trace) to locate him, and "[t]he incorrect address [i.e., Plaintiff's Trenton Street address] was obtained despite following this procedure." (*Id.*)

As for why it contacted Plaintiff again, P&F asserts that, after Mr. Cheung received the letter from Plaintiff's lawyer, "Patenaude's employee" put a red "X" in P&F's system next to

Plaintiff's address and added a note on the Frias account that the address was "bad" and that P&F had received an "Email from [an] attorney who represents Fernando Frias who lives at [the Trenton Street address] but does not have the same SSN [as Debtor Frias]." (Dkt. No. 33-2 at 6.) Mr. Cheung was the P&F employee who did this. (*See id.*; Dkt. No. 35-8 at 12–13.) But P&F contends that, because a "junior paralegal" overlooked both the red X and the account notes, it again mailed Plaintiff in 2020. (Dkt. Nos. 33-2 at 6; 35 at 4; 35-8 at 6, 12.)

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views facts in the light most favorable to the nonmoving party and resolves ambiguity in that party's favor, but it must not make credibility determinations or weigh evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986); *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994). A fact is material if it "might affect the outcome of the suit," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to show the lack of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that party succeeds, the burden shifts to the nonmoving party to demonstrate there is an issue for trial. *See id.* at 323–24. If the movant fails, the nonmovant need not present any evidence, even if it has the ultimate burden at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

On cross-motions for summary judgment, the Court evaluates each motion independently giving the nonmovant in each instance the benefit of all reasonable inferences. *Lenz. v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016).

### B.   Fair Debt Collection Practices Act Claims

Plaintiff contends that, by asserting he owed money he did not, contacting him after his

lawyer told it not to, and generally trying to collect a debt from him that someone else owed, P&F violated several provisions of the FDCPA.[1] The Court agrees.

Courts evaluate compliance with the FDCPA by viewing the defendant's conduct through the eyes of a hypothetical "least sophisticated debtor." *See, e.g.*, *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). This objective standard protects gullible, shrewd, ignorant, unthinking, and credulous consumers alike. *Id.* It applies even if the recipient of a communication is "unusually savvy," *Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055, 1062 (9th Cir. 2011), or did not actually rely on the debt collector's representation, *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1117 (9th Cir. 2014).

Unlike a "reasonable" person, the least sophisticated debtor, while not unreasonable, "is comparatively uninformed and naive about financial matters and functions as an average consumer in the lowest quartile (or some other substantial bottom fraction) of consumer competence." *Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d 1190, 1196 (9th Cir. 2019). Still, this person is not literally "the *least* intelligent consumer in this nation of [over] 300 million people," *id.* (emphasis original), and does not adopt "bizarre, idiosyncratic, or peculiar misinterpretations," *Gonzales*, 660 F.3d at 1062.

Consistent with its objective focus, the FDCPA is a strict liability statute, so violations do not require scienter. *See Clark*, 460 F.3d at 1175.

1. P&F Violated the FDCPA

P&F says its 2019 mailing to Plaintiff did not violate the FDCPA because Plaintiff knew or should have known that Plaintiff was not P&F's intended recipient, given the difference between his and Debtor Frias's social security number, as indicated on the notice. (Dkt. Nos. 34

---

[1] (*See* Dkt. No. 33 at 8–10 (citing first, 15 U.S.C. §§ 1692e(2), (10), which prohibit, among other things, the use of false, misleading, or deceptive representations or means in connection with the collection of any debt, including misrepresenting "the character, amount, or legal status" of the debt; second, § 1692f, which prohibits using "unfair or unconscionable means to . . . attempt to collect any debt"; and third, § 1692c(a)(2), which forbids communicating with a consumer who the debt collector knows is represented by counsel).)

at 7–9, 39 at 8–10.)

The Court already rejected this argument as a matter of law when it denied P&F's motion to dismiss:

> [F]aced with several pieces of information pointing to him (his name, address, employer's name and address, and the name of a financial institution at which he had an account) and only one pointing to another person (the social security number), an unsophisticated consumer is more likely to conclude that the social security number was inaccurate, rather than all of the other information, or that P&F was trying to collect from him even though someone else owed the debt.

*Frias v. Patenaude & Felix, A.P.C.*, Case No. C20-0805-JCC, Dkt. No. 16 at 6 (W.D. Wash. 2021). P&F again cites the same cases it did before, (*compare* Dkt. Nos. 34 at 7–9; 39 at 8–10, *with* Dkt. No. 10 at 4–7), and they are no more persuasive the second time around. Many involve communications to consumers where the difference between the actual recipient and the intended recipient was much clearer than here.[2] Other cases purport to apply an objective-consumer test to a strict liability statute, yet their outcomes hinge on the parties' subjective beliefs.[3] That is contrary to Circuit law. *See, e.g.*, *Basich v. Patenaude & Felix, APC*, 2013 WL 1755484, slip op. at 8 (N.D. Cal. 2015) ("Although Plaintiff was not herself confused[,] . . . a hypothetical least sophisticated debtor could have been misled or deceived." (citation omitted)).

Plaintiff is thus entitled to summary judgement that the 2019 and 2020 mailings violate

---

[2] *See Blauer v. Zucker, Goldberg & Ackerman, LLC*, 2011 WL 1113280, slip op. at 1, 3 (D. Del. 2011) (the "Mr. Blauer" named as a defendant in a foreclosure complaint was the debtor's husband, whereas plaintiff Blauer was the debtor's father); *Hedayati v. Perry Law Firm*, 2017 WL 4864491, slip op. at 7 (C.D. Cal. 2017) (pleadings listed a name similar to plaintiff's and an address other than where the plaintiff lived); *Hill v. Javitch, Block & Rathbone, LLP*, 574 F. Supp. 2d 819, 826 (S.D. Ohio 2008) (different names); *Thompson v. CACH, LLC*, 2014 WL 5420137, slip op. at 5 (N.D. Ill. 2014) (same); *Huy Thanh Vo. v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1094–95 (E.D. Cal. 2013) (same).

[3] *See Kaniewski v. Nat'l Action Fin. Servs.*, 678 F. Supp. 2d 541, 546 (E.D. Mich. 2011) (no FDCPA violation because plaintiff actually knew that someone else owed the debt); *Kujawa v. Palisades Collection, L.L.C.*, 614 F. Supp. 2d 788, 792 (E.D. Mich. 2008) (same); *Martin v. Kansas Counselors, Inc.*, 2014 WL 1910056, slip op. at 7 (D. Kan. 2014) (no liability because defendant's demands were "based upon its reasonable belief that Plaintiff actually owed the debts, a belief based upon Plaintiff and the actual debtor having the same first and last name.").

15 U.S.C. §§ 1692e and 1692f, and that the 2020 mailing also violates § 1692c(a)(2). *See Clark*, 460 F.3d at 1177 ("[O]ne action can give rise to multiple violations of the Act. . . . [W]e . . . routinely have allowed debtors to pursue causes of action under multiple sections of the FDCPA, even though each violation was based on the same circumstances").[4]

### 2. P&F's Bona Fide Error Defense Does Not Preclude Liability

P&F argues that even though (as it apparently concedes) the 2020 mailing violated the FDCPA, it is not liable because the violations resulted from a bona fide error. (Dkt. Nos. 34 at 10–13, 39 at 13–19.) A debt collector is not liable under the FDCPA if "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). This defense is a "narrow exception" to the general rule of strict liability under the FDCPA. *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008).[5]

To establish the bona fide error defense, P&F must show that (1) its violations were unintentional, (2) they resulted from a bona fide error, and (3) P&F maintained procedures reasonably adapted to avoid the error. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

P&F's violations were clearly unintentional; everyone agrees the 2020 packet was not supposed to go to Plaintiff. (*See* Dkt. No. 33-2 at 20.) But it is less clear that bona fide errors caused the violations flowing from that event, or that P&F maintained procedures reasonably

---

[4] "The Ninth Circuit has concluded that statutory damages under the FDCPA are limited to $1,000 per lawsuit, not $1,000 per violation." *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1238 (C.D. Cal. 2007) (citing *Clark*, 460 F.3d at 1178 (holding that damages under the FDCPA are based on a single set of circumstances)). The Court thus does not reach holdings as to how many violations occurred or what specific statutory subsections P&F violated. (*See also* Dkt. No. 33 at 9 (acknowledging "the number of FDCPA violations is immaterial to liability").)

[5] Because P&F asserts a defense on which it has the burden, it must show there is no disputed issue as to the facts establishing the defense. *See, e.g.*, *Johnson v. Riddle*, 443 F.3d 723, n.1 (10th Cir. 2006). Whereas Plaintiff's burden, at least on his cross-motion, is to show an absence of dispute as to P&F's inability to establish the defense. *See Celotex*, 477 U.S. at 323–24.

adapted to avoid such errors.

                a.    The Violations Did Not Result from Bona Fide Errors

P&F asserts that the violations arising from the 2020 mailing[6] resulted from two errors: A junior paralegal's failure to notice (1) a red X indicating a bad address, and (2) the account notes about the address and Plaintiff having a lawyer. (Dkt. No. 33-2 at 17–18.)

Plaintiff argues that P&F has not actually proven that this is what happened because there is no direct evidence from anyone with personal knowledge that Plaintiff's Trenton Street address was in fact marked with a red X or that a paralegal missed the X marker or the account notes. (Dkt. No. 33 at 11–12.) Plaintiff is wrong: A declaration from a 30(b)(6) witness need not be made on personal knowledge if the declarant in fact gave a 30(b)(6) deposition about the specifically enumerated topics. *See SEC v. Hemp, Inc.*, 2018 WL 4566664, slip op. at 3 n.27 (D. Nev. 2018) (citing cases).

Still, even if P&F has demonstrated bona fide errors, it has not shown that these errors caused its violations. A paralegal missing the red X and the Frias account notes could explain why P&F contacted Plaintiff a second time. But it does not explain why the 2020 letter inaccurately asserted that Plaintiff owed money to Discover Bank and that there was a judgment against him. Nor does it explain why Mr. Cheung—who personally received notice that P&F had the wrong person and wrote account notes in P&F's system—filed for a second writ of garnishment against Plaintiff's income, which P&F attached to a second letter that Mr. Cheung signed and mailed to Plaintiff. Mr. Cheung testified that Plaintiff's address was not on the letter when he signed and reviewed it; but Plaintiff's name apparently still was. (*See* Dkt. Nos. 33-2 at 18, 35-8 at 9–10.) And in any case, the garnishment filing that Mr. Cheung signed and filed in the state court bore Plaintiff's name and his address. (*See* Dkt. No. 33-1 at 26–27.)

---

[6] P&F previously suggested it was asserting a bona fide error defense for the 2019 mailing, too, stating, "[t]he incorrect address was obtained despite following this procedure" of performing a skip trace. (Dkt. No. 33-2 at 5.) P&F now clarifies that "[t]he bona fide error defense is being asserted only as to the second event" where it contacted Plaintiff. (Dkt. No. 39 at 16.)

As a matter of law, that name and address should have rung a bell for P&F. Blaming a subordinate—especially a junior one—for something that goes out bearing one's own signature is rarely a compelling excuse. Nor is it sufficient, on this record, to establish that P&F's violations resulted from a bona fide error. *See Coleman v. Berman & Rabin, P.A.*, 2015 WL 4524599, slip op. at 8 (E.D. Mo. 2015) (rejecting bona fide error defense where attorney argued that procedural deficiencies in debt-collection pleading occurred despite his specific procedure of asking a paralegal to properly prepare the pleading and send it to all parties). *Cf. Anthony v. United States*, 2021 WL 4078071, slip op. at 3 (W.D. Wash. 2021) (citing *Hart v. United States*, 817 F.2d 78, 81 (9th Cir. 1987) ("Secretarial negligence, if it exists, is chargeable to counsel.")).

    b. *P&F Did Not Maintain Procedures Reasonably Adapted to Avoid Such Errors*

Even if P&F could establish that its violations resulted from bona fide errors, that would not end the inquiry. The errors must occur despite procedures reasonably adapted to prevent them. This requires P&F to show that it (1) actually employed or implemented the procedures; and (2) the procedures are reasonably adapted to avoid the specific errors at issue. *Reichert*, 531 F.3d at 1006. Doing this "require[s] more than a mere assertion" that procedures were maintained and reasonably adapted; "[t]he procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Id.* at 1007.

P&F points to the following documents that it says comprise its procedures to guard against the specified errors: instructions for "Misc. Letters with a Bad Address," ones for "Legal Status Accounts with Bad Address," and, finally, a "Return Mail Procedure." (Dkt. Nos. 35-3 through 35-5.) Read together, these procedures require that all mail returned to P&F be categorized as either "New Address" or "Bad Address" depending on whether a forwarding address is included on the return sticker (triggering the "New Address" procedure), or whether the current address is undeliverable and there is no forwarding address (which triggers the "Bad Address" procedure). (*See* Dkt. No. 35-5 at 1.) For returned mail in the "Bad Address" category,

employees are supposed to locate the account in P&F's system; enter an "A/R code" to create a notation flagging the address as "bad," and enter a narrative comment. (*See* Dkt. Nos. 35-3; 35-4; 35-5 at 1–3; 35-8 at 11–12, 14.)

P&F fails as a matter of law to establish that these procedures are reasonably adapted to avoiding the errors that occurred here (i.e., a paralegal missing the red X and the account notes). Plaintiff's Trenton Street address was, in fact, receiving mail, so it is not clear how P&F's "Bad Address" procedure—which specifies how to deal with mail that comes back as undeliverable—would be triggered at all. Moreover, P&F's procedures merely tell *how* to get P&F's system to display an address as "bad." They say nothing about how to interpret the notations in P&F's system or that one must look at the account notes to avoid sending letters to bad addresses or to people with lawyers. Based on P&F's evidence, even strictly following the procedures articulated by P&F would not have stopped the 2020 mailing from going to Plaintiff.

Mr. Cheung contends in his declaration that all P&F employees "should know based on the training they receive that they should not arrange service to a bad address" and "at the very least, . . . if they see a Bad Address as being marked, they should look more closely at the account notes." (Dkt. No. 35 at 3.) But "[a] conclusory declaration that it maintained the required procedures is not enough to show Defendant is entitled to the bona fide error defense." *Grande v. Fair Collections & Outsourcing, Inc.*, 2013 WL 12114006, slip op. at 4 (C.D. Cal. 2013); *accord Roadhouse v. Patenaude & Felix*, A.P.C., 2015 WL 1691885, slip op. at 3 (holding that "a self-serving affidavit" that defendant maintained certain procedures was insufficient evidence to establish a bona fide error defense on summary judgment).

More fundamentally, P&F presents no evidence that it trained its employees on FDCPA compliance so they would know what to do had they looked at the account notes (for example, not contacting someone represented by counsel). *Cf. Reichert*, 531 F.3d at 1006 (citing *Jenkins v. Heintz*, 124 F.3d 824, 834–35 (7th Cir. 1997) (evidence that defendant, among other things, published a regularly updated, in-house FDCPA compliance manual supplied to each employee

served to establish bona fide error defense)). Accordingly, P&F fails to establish its bona fide error defense, and Plaintiff is entitled to summary judgment on his FDCPA claims.

### C. Washington Consumer Protection Act ("CPA") Claims

Plaintiff asserts *per se* CPA claims predicated on P&F's alleged violation of the Washington Collection Agencies Act ("WCAA"). A CPA claim requires a plaintiff to establish (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) impacting the public interest, (4) an injury to the plaintiff's business or property, and (5) legal causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). A *per se* CPA claim lets a plaintiff satisfy the first three parts of this test by proving a predicate violation of "a statute that contains a specific legislative declaration of public interest impact." Wash. Rev. Code § 19.86.093(2); *see also Hangman*, 719 P.2d at 535–37. The WCAA is such a statute. *See Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 897 (Wash. 2009). P&F targets Plaintiff's CPA claims in three respects.

First, it argues that Plaintiff fails as a matter of law to show a violation of Wash. Rev. Code § 19.16.250(21). According to P&F, this section of the WCAA only forbids collecting an incorrect or unauthorized amount, not collecting a correct, authorized amount from the incorrect person. (Dkt. Nos. 39 at 19–20; 34 at 16–17.) This argument relies primarily on *Opico v. Convergent Outsourcing, Inc.*, 2021 WL 1611505, slip op. at 10 (W.D. Wash. 2021). There, the defendant sent "informational and nonthreatening" collection letters to a plaintiff whose name (and apparently all of his personal information) matched that of the debtor—indeed, identity theft was his only explanation for why he did not owe the debt. *See id.* at 1, 7, 10. The *Opico* court held that "merely contacting an individual[,] whose name matches the account holder[,] about the debt," did not constitute "unfair or unconscionable means" in violation of § 1692f; the court reached the same outcome on Wash. Rev. Code § 19.16.250(21), because it reasoned that the state statute should be interpreted consistently with its federal counterpart. *Id.* at 10.

Here, in contrast, P&F did not "merely contact an individual . . . about the debt." *Id.*

ORDER
C20-0805-JCC
PAGE - 10

Instead, P&F twice told Plaintiff that it was using the coercive post-judgment remedy of garnishment to execute against his funds. "[A]ttempting to garnish a consumer's wages or bank account when the consumer does not owe the debt is an 'unfair or unconscionable means to . . . attempt to collect [a] debt' under Section 1692f." *Frias*, C20-0805-JCC, Dkt. No. 16 at 6 (first alteration added). Thus, construing Wash. Rev. Code § 19.16.250(21) consistently with its federal counterpart, as *Opico* teaches, there is no genuine dispute that P&F twice "attempt[ed] to collect any sum other than" those allowed by law in violation of Wash. Rev. Code § 19.16.250(21).

Next, P&F argues that Plaintiff cannot establish the causation and injury elements of his CPA claim. (Dkt. Nos. 39 at 21–22; 34 at 14–15.) To establish an injury to business or property, monetary damages are not required, and unquantifiable damages may suffice. *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1128 (W.D. Wash. 2012). But while the injury need not be great, it must still be established. *Id.* (citing *Hangman*, 719 P.2d at 539; *Panag*, 204 P.3d at 900). "Consulting an attorney to dispel uncertainty regarding the nature of an alleged debt" and "[i]nvestigation expenses and other costs resulting from a deceptive business practice sufficiently establish injury." *Panag*, 204 P.3d at 902.

P&F is right that Plaintiff's feelings of anxiety, uncertainty, and distress are not cognizable. (Dkt. No. 34 at 15.) But the same is not so for expenses that he incurred to send P&F's materials to his attorney or, more generally, in seeking legal counsel after receiving both the 2019 and 2020 mailings. (*See* Dkt. No. 33-1 at 3, 5 (Plaintiff sought legal counsel after receiving both mailings).) The time that Plaintiff took away from work to do this, (*id.* at 5), is also cognizable, *see Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 825 P.2d 714, 720 (Wash. Ct. App. 1992) (being forced to take time away from business is a cognizable injury under the CPA). Plaintiff thus establishes the causation and injury for his CPA claims.

Finally, P&F asks the Court to dismiss Plaintiff's request for injunctive relief because the availability of money damages precludes equitable relief, and because there is no risk of P&F's

ORDER
C20-0805-JCC
PAGE - 11

1   errors recurring. (Dkt. No. 34 at 17–19.) As this Court previously explained, "the Washington
2   Supreme Court squarely rejected P&F's first argument decades ago, when it held that a
3   consumer may seek an injunction under the CPA even if he 'could be made whole by a money
4   judgment.'" *Frias*, C20-0805-JCC, Dkt. No. 16 at 15 (quoting *Hockley v. Hargitt*, 510 P.2d
5   1123, 1132 (Wash. 1973)). As for the second argument—risk of recurrence—Plaintiff is wrong
6   that deciding the issue on summary judgment is premature, (Dkt. No. 44 at 10–11), but P&F is
7   also wrong that nothing in the record suggests a risk of recurrence, (*see* Dkt. No. 34 at 18).

8       Not only did P&F *twice* send letters to someone who did not owe its client any money,
9   and who had a different address and social security number from the person who did; it also
10  *twice applied for and received writs of garnishment* against that person's assets. (*See* Dkt. No.
11  33-1 at 8–12, 25–32.) Matthew Cheung signed both sets of papers. (*See id*) He did this after he—
12  not just his firm, but him personally—had learned that P&F had the wrong person and after he
13  wrote a note to that effect in P&F's system. Yet still the second garnishment application was
14  filed, and the second letter went out. The evidence is undisputed that, even if P&F had followed
15  its policies and procedures, these errors would have happened. (*See* Pt. B.2.) The trier of fact
16  could thus reasonably conclude that they could happen again. P&F presents no evidence to
17  suggest otherwise. Accordingly, Plaintiff is entitled to summary judgment on his CPA claims,
18  and P&F is not entitled to summary judgment on his request for injunctive relief.

19      The Court appreciates that practicing law can be frenetic, particularly in a high-volume
20  practice. Though lawyers try to avoid mistakes, some will happen. It is one thing to make a
21  mistake from doing too much too fast; but it is quite something else to let things become so rote
22  or haphazard that respect for the law and fairness to others become secondary concerns.

23  **III.   CONCLUSION**

24      For the foregoing reasons, Plaintiff's motion for partial summary judgment is
25  GRANTED, and P&F's cross motion for summary judgment is DENIED.
26      It is further ORDERED that the current trial date is VACATED. Within 30 days of this

order, the parties will submit a status report addressing the following: (1) a new date for a bench trial and the estimated duration; (2) the possibility of informal resolution; and (3) whether the parties believe further alternative dispute resolution might be appropriate.

DATED this 14th day of January 2022.

John C. Coughenour
UNITED STATES DISTRICT JUDGE